No. 24-5219

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

IN RE: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION: INSURANCE SUBROGATION APPEAL.,

On Appeal from the United States District Court
for the Central District of California
No. 8:22-ml-03052-JVS-KES
Hon. James V. Selna

_____

## APPELLANT'S OPENING BRIEF

_____

WILLIAM J. HOFFMANN
ADAM M. ROMNEY (SBN 261974)
SUSAN M. BENSON (SBN 146837)
GROTEFELD HOFFMANN LLP
15303 Ventura Blvd., Bldg. C, Ste. 1505
Sherman Oaks, CA 91403
Telephone: (747) 233-7150

ELLIOTT R. FELDMAN
NATHAN M. DOOLEY (SBN 224331)
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-2071

*Attorneys for Subrogation Insurance Appellants*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rules of Appellate Procedure 28(b) and 26.1, counsel for Plaintiffs certify that each Plaintiff has previously submitted corporate disclosure statements to the underlying district court in this Multi-District Litigation Action. Filing Counsel represents Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") and further discloses that State Farm is a non-governmental corporate party that does not have any parent corporation or publicly held corporation that owns ten percent (10%) of its stock.

Date: December 11, 2024

/s/ Adam M. Romney
Adam M. Romney, Esq.
GROTEFELD HOFFMANN LLP
15303 Ventura Blvd., Bldg. C, Ste. 1505
Sherman Oaks, CA 91403
Telephone: (747) 233-7150

*Attorneys for Subrogation Insurance Appellants*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ ii

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION ................................................................................................1

JURISDICTIONAL STATEMENT .....................................................................2

ISSUE PRESENTED ...........................................................................................3

STATEMENT OF THE CASE..............................................................................3

   I.   RELEVANT FACTS...................................................................................3

   II.  PROCEDURAL HISTORY ........................................................................5

      A.  Motion to Dismiss ...............................................................................5

      B.  Motion to Conduct Jurisdictional Discovery ...............................................7

SUMMARY OF ARGUMENT .............................................................................7

STANDARD OF REVIEW ...................................................................................9

ARGUMENT .......................................................................................................11

   I.   The District Court Erred in Ruling That it Lacked Specific Personal Jurisdiction...................................................................................................11

      A.  The Korean Entities Purposefully Availed Themselves of the California Market.....................................................................................................12

      B.  Plaintiffs' Claims Arose Out of or Related to the Korean Entities' Contacts with California .................................................................................19

   II.  THE DISTRICT COURT ERRED BY FAILING TO RESOLVE CONFLICTING STATEMENTS IN PLAINTIFFS' FAVOR ...........................21

      A.  The District Court Erred by Resolving Conflicting Statements in the Defendants' Favor ....................................................................................22

      B.  The District Court Erred in Adopting Defendants' Interpretation of Plaintiffs' Shipping Records.................................................................25

   III.  THE DISTRICT COURT ERRED BY DENYING PLAINTIFFS JURISDICTIONAL DISCOVERY ..............................................................27

CONCLUSION....................................................................................................31

STATEMENT OF RELATED CASES.................................................................32

Form 8. Certificate of Compliance for Briefs.........................................................33

# TABLE OF AUTHORITIES

## CASES

*AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225 (N.D. Cal. 2014) ......................12

*Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102 (1987) ..................... 14, 18

*Axiom Foods, Inc. v. Acherchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017).... 10, 12

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995).........................................................9

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082 (9th Cir. 2000) ......21

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ............................ 9, 21, 22, 31

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985)...........................................10

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066 (9th Cir. 2011) .............10

*Daimler AG v. Bauman*, 571 U.S. 117 (2014).................................................... 10, 11

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280 (9th Cir. 1977) 22, 25, 27

*Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053 (C.D. Cal. 2015).......... 13, 15, 20

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021)............. passim

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) .............18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)............20

*In re German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059 (N.D. Cal. 2019)
................................................................................................................ 16, 21

*Klein v. Ljubljana Inter Auto d.o.o.*, No. CV 20-10079-DMG, 2022 WL 16859589,
at *3 (C.D. Cal. Aug. 2, 2022) .............................................................................17

*Laub v. U.S. Dept. of Int.*, 342 F.3d 1080 (9th Cir. 2003) .......................................28

*LNS Enters. LLC v. Cont'l Motors, Inc.,* 22 F.4th 852, (9th Cir. 2022).......... passim

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011)...............23

*Never Too Hungover, LLC v. Drinkaid LLP*, 2024 WL 402659, at *1-2 (D. Nev.
Feb. 1, 2024) ................................................................................................. 30, 31

*Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429 (D. N.J. 2021)..................17

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797(9th Cir. 2004) ..... passim

*World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980)...................... 11, 16, 17

*Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023)............................. passim

*Zakikhan v. Hyundai Motor Co.*, 2021 WL 4805454, at *4 (C.D. Cal., June 28,
2021) ...................................................................................................................15

# INTRODUCTION

Over a period of 11 years, Defendants manufactured and sold millions of defective Kia and Hyundai vehicles which lacked legally-mandated anti-theft equipment; allowing the vehicles to be easily stolen in a matter of seconds. Predictably, a defect of this ubiquity and importance eventually became common knowledge. In or around 2020, after a group of teenagers in Milwaukee—dubbed the "Kia Boyz" on social media platforms—filmed videos of themselves stealing the defective vehicles and publicized the vehicles' design defects, a nationwide-wave of theft and vandalism promptly ensued.

Plaintiffs, insurance companies whose insureds suffered injury as a result of the defective design, sued two Korean entities, Kia Corporation ("KC") and Hyundai Motor Company ("HMC") (collectively the "Korean entities"), along with their American subsidiaries. Despite the Korean entities' substantial targeting of the United States, and California specifically, with their vehicles, the district court found it lacked personal jurisdiction over the Korean entities and dismissed them from this litigation. In doing so, the district court disregarded thousands of publicly available shipping records demonstrating the Korean entities' targeted and systematic activities directing their vehicles into the United States and California.

The district court's ruling essentially renders the Korean entities immune from suit in the United States and imposes impossible burdens on plaintiffs attempting to

1

hold foreign manufacturers accountable for their defective and injury-causing products manufactured for sale and directed to the United States. The district court's decision is directly contrary to the U.S. Supreme Court's holding in *Ford Motor Company v. Montana Eighth Judicial District* and should be reversed.

## JURISDICTIONAL STATEMENT

The MDL district court obtained subject matter jurisdiction over all Kia Hyundai Vehicle Theft Cases after removal to federal court pursuant to 28 U.S.C. § 1332(d)(2) of the Class Action Fairness Act of 2005. (*See* 6-ER-1500). The district court had supplemental jurisdiction over the state court claims pursuant to 28 U.S.C. § 1367. (*See* 6-ER-1500). Further, the district court had subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 2310(d) because: a) each of Plaintiffs' claims exceed $25 in value; b) the total amount in controversy exceeds $50,000; and c) the number of named Class Plaintiffs exceeds 100. (*See* 6-ER-1500-1501).

Plaintiffs appeal from the Opinion and Order (1-ER-4-22) entered July 5, 2024, and the Judgment pursuant to Fed. R. Civ. P. 54(b) entered July 22, 2024, (1-ER-2-3), dismissing all claims asserted against HMC and KC for lack of personal jurisdiction. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as the judgment is a final, appealable judgment. Notice of appeal was timely filed under Fed. R. App. P. 4(a) on August 20, 2024. (8-ER-1638-1655).

## ISSUE PRESENTED

Are the Korean entities subject to personal jurisdiction within the Central District of California for their actions: (1) designing and manufacturing the subject Vehicles for sale in the United States and California, and (2) distributing the Vehicles thereto?

## STATEMENT OF THE CASE

## I.    RELEVANT FACTS

This multi-district litigation concerns allegations that Defendants manufactured and sold up to 14.3 million vehicles that lacked an engine immobilizer, or any equivalent operational anti-theft equipment (hereinafter, the "Vehicles"). (*See* 6-ER-1453). The failure to include those components, along with other related design flaws, constitute a failure to implement Federal Motor Vehicle Safety Standards promulgated by the National Highway Traffic Safety Administration ("NHTSA"). (*See* 6-ER-1513). The absence of any anti-theft equipment constituted a design flaw that allows thieves to steal the Vehicles in less than ninety seconds ("Thief Friendly Design"). (*Id.*). This Thief Friendly Design has resulted in significant and ongoing injury to both people and property, sometimes resulting in death. (*See* 6-ER-1514).

The very same Vehicles that Defendants sold without the legally mandated anti-theft equipment in the United States were sold with engine immobilizers in

Canada and various other countries in Europe and elsewhere. (*See* 6-ER-1453). This design differentiation between products sold into international markets demonstrates that the impacted Vehicles were targeted to the United States market. Defendants also made immobilizers available to purchasers of the defective Vehicles in the United States, but only if those purchasers purchased expensive upgrades and luxury trim packages. (*Id.*). This sales strategy was unique to the United States and was only possible because vehicles for the United States market did not include anti-theft devices as a standard feature like their international equivalents.

Plaintiffs are insurance companies who insured Vehicles that their policyholders purchased or leased (the policyholders shall hereafter be referred to as "Insureds"). (*See* 6-ER-1454). All Plaintiffs incurred damages and/or losses because their Insureds' Vehicles were stolen, damaged and/or vandalized, due to their defective condition, for which insurance claims were submitted and paid. (*Id.*). Plaintiffs' Amended Master Complaint plainly alleged facts sufficient to establish specific personal jurisdiction over the Korean entities. Specifically, Plaintiffs alleged:

- "HMC conducts substantial business in the State of California." (*See* 6-ER-1460);

- "HMC shipped over 7,500 shipments of vehicles and parts through California's ports for delivery and sale to California facilities." (*See* 6-ER-1460);

- HMC "maintains a research and design facility in California and employs thousands of people within" California. (*See* 6-ER-1460, 1501);

- HMC controls key operational aspects of Hyundai dealership operations in California and the United States. (*See* 6-ER-1460-1461);

- "KC conducts substantial business in the State of California." (*See* 6-ER-1461);

- "KC initiated over 5,000 shipments of vehicles and parts through California's ports for delivery and sale to California facilities." (*See* 6-ER-1461-1462);

- KC controls key operational aspects of Kia dealership operations in California and the United States. (*See* 6-ER-1462);

- HMC and KC "purposely availed themselves" of the California market by "extensively promoting, warranting, selling, leasing and servicing" vehicles in California. (*See* 6-ER-1499);

- HMC and KC intentionally and specifically designed and sold vehicle models without immobilizers or comparable, equally effective anti-theft equipment uniquely into the United States market. (*See* 6-ER-1453, 1511);

- HMC purposely availed itself of the protections of the district court, by pleading in 2015 that it "manufactures Hyundai-branded parts for sale in the United States and abroad." (*See* 6-ER-1499-1500);

- KC purposely availed itself of the protections of the district court, by pleading in 2021 that it "manufactures, sells and distributes KIA branded automobiles and parts throughout the United States[.]" (*See* 6-ER-1500); and

- HMC and KC "purposely served the California market for automobiles, and in excess of 20,000 insurance claims have been made within California due to the failures of Defendants' Vehicles in the State." (*Id.*).

## II.   PROCEDURAL HISTORY

### A. Motion to Dismiss

As subrogees to the rights of their Insureds, Plaintiffs sued Hyundai Motor America, Hyundai Motor Company, Kia America, Inc., and Kia Corporation (collectively "Defendants") for damages incurred as a result of the Thief Friendly Design of the Vehicles. On February 23, 2024, Defendants filed a Motion to Dismiss arguing that the district court lacked personal jurisdiction over the Korean entities. (6-ER-1391). The Motion to Dismiss appended declarations by the Korean entities' in-house counsel denying Plaintiffs' substantive jurisdictional allegations. (*See* 6-ER-1422-1425, 6-ER-1426-1429). The declarations state, without any supporting material evidence, that the Korean entities do not sell or distribute their vehicles in California or elsewhere in the U.S. (6-ER-1423, 6-ER-1427).

On March 22, 2024, while opposing the Motion to Dismiss, Plaintiffs submitted voluminous shipping records which showed that the Korean entities substantially targeted the forum market by sending thousands of vehicles, including test vehicles, into the United States and through California ports. (2-ER-74-79, 2 ER-80-346 and 3-ER-348-357, 3-ER-358-646 and 4-ER-648-668, 4-ER-669-946 and 5-ER-948-1043, and 5-ER-1044-1246 and 6-ER-1248-1373).

On Reply, the Korean entities submitted additional declarations from their in-house counsel denying Plaintiffs' jurisdictional allegations. (*See* 2-ER-68-70, 2-ER-71-73). After a hearing on the Motion, Judge Selna entered an order on July 5, 2024, dismissing the Korean entities from this litigation. (1-ER-4). Judge Selna's decision

improperly treated the declarations of in-house counsel as uncontroverted. At oral argument, Judge Selna questioned his own decision, commenting that he "would like to get the answer from the Ninth Circuit on a 1292(b)" and entered a Rule 54(b) judgment "so [Plaintiffs] can go up immediately on this issue." ( See 7-ER-1545-1592 at 46:14-21). This appeal follows.

### B. Motion to Conduct Jurisdictional Discovery

On March 22, 2024, Plaintiffs moved for jurisdictional discovery; arguing that the shipping records attached to their Opposition to the Motion to Dismiss provided a colorable basis for asserting personal jurisdiction over the Korean entities. (6-ER-1379). On April 19, 2024, the parties argued the motion in the district court. During the hearing, Judge Selna repeatedly suggested jurisdictional discovery was unnecessary because the record already contained sufficient evidence to establish personal jurisdiction over the Korean entities. (*See* 7-ER-1593-1636, at 22:25-23:2; 23:14-16). Judge Selna then denied Plaintiffs' motion for jurisdictional discovery. (1-ER-23).

### SUMMARY OF ARGUMENT

The District Court's dismissal of the Korean entities was legal error. First, the district court erred in its analysis of personal jurisdiction. Under *Ford Motor Co. v. Montana Eighth Judicial District Court*, the district court has personal jurisdiction over the Korean entities because the Korean entities purposely availed themselves

of the California market, and Plaintiffs' claims related to the Korean entities' contacts with California. 592 U.S. 351, 363 (2021). Plaintiffs provided sufficient evidence demonstrating that the Korean entities designed and manufactured the Vehicles for sale in the United States and California. Plaintiffs' shipping records show that approximately 70% of all shipments of the Korean entities' vehicles to the United States were sent directly to California. Further, Plaintiffs' claims relate to these contacts with California because Plaintiffs' Insureds were injured by the same Vehicles that were systematically and continuously directed to the United States.

Second, the district court erred by weighing and interpreting conflicting declarations and evidence. As this Court has held, at the pleading stage, conflicting declarations regarding the court's jurisdiction must be resolved in the plaintiff's favor. *LNS Enters. LLC v. Cont'l Motors, Inc.,* 22 F.4th 852, 859 (9th Cir. 2022). Instead, the district court improperly resolved conflicting declarations in the Defendants' favor. The district court further erred by accepting Defendants' interpretation of Plaintiffs' shipping records to find that the Korean entities did not target the forum state. By crediting Defendants' declarations and version of the facts over Plaintiffs' well-supported declaration and allegations, the district court improperly weighed the evidence at the pleading stage.

Finally, the district court erred in denying Plaintiffs' request for jurisdictional discovery. Plaintiffs provided substantial evidence supporting their jurisdictional

allegations and should have been afforded the opportunity to seek discovery to resolve any evidentiary issues. Instead, the district court misleadingly suggested that discovery was unnecessary because sufficient evidence of personal jurisdiction already existed. This resulted in the denial of any opportunity to conduct discovery on the statements offered by the Korean entities' in-house counsel. A rule that allows foreign defendants to simply issue blanket denials of a plaintiff's jurisdictional allegations and secure dismissal without further discovery is untenable and cannot stand.

## STANDARD OF REVIEW

While opposing a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that personal jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Whether the plaintiff met its burden of establishing personal jurisdiction is reviewed *de novo*. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023). Personal jurisdiction does not need to be plead as a discrete issue, and "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Yamashita*, 62 F.4th at 502 (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir.

2011)). Uncontroverted allegations in the Plaintiffs' complaint must be taken as true. *LNS Enters. LLC, 22 F.4th at 859.*.

In the Ninth Circuit, personal jurisdiction attaches when (1) the defendant either "purposefully directs" its activities toward the forum or "purposefully avails" itself of the privileges of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Axiom Foods, Inc. v. Acherchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–78 (1985)). A state may assert specific jurisdiction over a foreign vehicle manufacturer that has "deliberately extended" its business there – "even though the vehicle had been designed and made overseas and sold" elsewhere. Ford Motor Co., 592 U.S. at 363. . On that basis, specific personal jurisdiction attaches when a vehicle manufacturer "serves a market for a product in the forum State and the product malfunctions there." *Id.*

Plaintiffs may also rely upon evidence outside the pleadings, including declarations, affidavits and other materials, to establish personal jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 123 (2014). When parties present opposing

10

affidavits or declarations, **the court is "obligated to resolve conflicting statements in Plaintiffs' favor."** *LNS Enters. LLC*, 22 F. 4th at 859 (emphasis added).

## ARGUMENT

### I.    The District Court Erred in Ruling That it Lacked Specific Personal Jurisdiction

The United States Supreme Court has addressed specific personal jurisdiction in the context of global car manufacturers in two cases: *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980) and *Ford Motor Co. v. Montana Eighth Judicial District*, 592 U.S. 351 (2021). Those cases establish that this case is the "paradigm case of specific jurisdiction … 'if a California plaintiff, injured in a California accident involving a [foreign]-manufactured vehicle, sued [the foreign manufacturer] alleging that the vehicle was defectively designed[,]'" a California court would have personal jurisdiction over the defendant. *Ford Motor Co.*, 592 U.S. at 364 (quoting *Daimler*, 571 U.S. at 127).

*World-Wide Volkswagen* established the bedrock rule that "[w]hen a corporation purposefully avails itself of the privilege of conducting activities within the forum State it has clear notice that it is subject to suit there[.]" 444 U.S. at 297. In *Ford*, the Court announced that when the activities of a manufacturer are "not simply an isolated occurrence, but arise[] from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or

all] other States, it is not unreasonable to subject it to suit in one of those States[.]" 592 U.S. at 363 (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

Applying those principles in the Ninth Circuit, personal jurisdiction attaches when (1) the defendant either "purposefully directs his activities toward the forum or purposefully avail[s] himself of the privileges of conducting activities in the forum;" (2) the claim "arises out of or relates to the defendant's forum-related activities;" and (3) the exercise of jurisdiction is reasonable. *Axiom Foods, Inc.,* 874 F.3d at 1068. In this case, Plaintiffs presented sufficient evidence to make a prima facia case that the Korean entities designed and manufactured the Vehicles specifically for sale in the United States and California markets. Thus, *Ford* applies and the Korean entities are subject to the jurisdiction of the district court.

## A. The Korean Entities Purposefully Availed Themselves of the California Market

The evidence that the Korean entities intentionally directed their activities into California is overwhelming. For personal jurisdiction purposes, the "threshold of what constitutes an intentional act is relatively low[.]" *AirWair Int'l Ltd. v. Schultz,* 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014). In foreign manufacturer cases, "[a] showing that a defendant purposefully directed his conduct toward a forum state ... usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods

12

originating elsewhere." *Schwarzenegger*, 374 F.3d at 803. Similarly, personal jurisdiction attaches when a foreign vehicle manufacturer retains some control over its manufacturing processes within California. *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1058 (C.D. Cal. 2015).

Plaintiffs' allegations amounted to much more than a "stream of commerce" theory. Purposeful availment requires that the defendants "reach out beyond [their] home[s] – by, for example, exploiting a market in the forum State . . . ." *Yamashita*, 62 F.4th at 503. One example of a contact which constitutes purposeful availment is sending shipments of a product through a port in the forum state, thereby relying on the laws of the forum to "protect their property while it was located within its jurisdiction." *Id.* at 504. Sale of a product in the forum state "also clearly qualif[ies] as purposeful availment." *Id.* "[F]or purposeful availment purposes, a single sufficiently deliberate contact can suffice." *Id.*

Here, Plaintiffs provided sufficient evidence that the Korean entities targeted the forum state by: (1) designing the Vehicles for use in California; (2) marketing the Vehicles in California; and (3) shipping the Vehicles to California for sale in the State. In finding insufficient contacts to show purposeful availment by the Korean entities, the district court erroneously relied on "**the uncontested facts** [which] establish that HMC and KC do not distribute or sell vehicles in California or the United States, maintain a sales force in California, or direct marketing campaigns in

California." (1-ER-12) (emphasis added). In truth, Defendants' factual statements were hotly contested by the parties and the Plaintiffs submitted declarations and voluminous shipping records in opposition to the motion. The evidence offered by Plaintiffs unquestionably demonstrates that the Korean entities exploited the California market.

First, the Korean entities availed themselves of the forum state by specifically designing the Vehicles for the California market. This conduct "indicate[s] an intent or purpose to serve the market in the forum State[.]" *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 112 (1987). Plaintiffs allege that the Korean entities specifically designed and manufactured the Vehicles for sale in the United States without the anti-theft equipment. By contrast, those same automobile models contained the missing anti-theft equipment, when they were shipped to other parts of the world. (*See* 6-ER-1453, 1511). These region-specific design differences demonstrate the subject Vehicles were specifically directed to the forum state.

Further, information culled from the bills of lading establish that the Korean entities regularly shipped "test cars" to California as part of their manufacturing process. Those records list the Korean entities listed as the "shippers" for "test vehicle new car[s]" that arrived at the Port of Long Beach for ultimate delivery to a US subsidiary in Irvine, CA. (*See* 2-ER-80-346, 3-ER-358-646 and 4-ER-648-668, 4-ER-669-946 and 5-ER-948-1043, and 5-ER-1044-1246 and 6-ER-1248-1373,).

This demonstrates that the Korean entities intended to ensure manufacturing compliance with applicable NHTSA safety standards, or, in other words, serve the California market.

Moreover, the Korean entities' retained control over the manufacturing process within California. *See Falco*, 96 F. Supp. 3d at 1059. These forum-specific testing and manufacturing practices demonstrate sufficient minimum contacts for the assertion of personal jurisdiction because the Korean entities "design[ed] the product for the market in the forum State[.]" *LNS Enters. LLC*, 22 F.4th at 861. Those forum-specific design decisions and interactions with U.S. based regulators formed the basis of the district court's decision to assert personal jurisdiction over the same Korean entities less than three years ago. *See Zakikhan v. Hyundai Motor Co.*, 2021 WL 4805454, at *4 (C.D. Cal., June 28, 2021).

Furthermore, the Korean entities specifically targeted the California market by sending over 70% of their total U.S. shipments directly to California. (*See* 2-ER-80-346, 4-ER-669-946 and 5-ER-948-1043, and 5-ER-1044-1246 and 6-ER-1248-1373,). In total, the Korean entities directed more than 12,000 shipments of Vehicles to the California market that were delivered directly to the State. (*See* 2-ER-80-346 and 3-ER-348-357; 4-ER-669-946 and 5-ER-948-1043).

The Korean entities' shipment of these Vehicles to American Subsidiaries does not shield them from personal jurisdiction. *See In re German Auto. Mfrs.*

*Antitrust Litig.*, 392 F. Supp. 3d 1059, 1066-68 (N.D. Cal. 2019). Defendants argued that, because the Korean entities ship their vehicles to the American subsidiaries "FOB Korea," and the subsidiaries import the vehicles to the United States, the Korean entities do nothing more than place vehicles into the stream of commerce. (*See* 2-ER-54-55). However, *World-Wide Volkswagen* and *Ford* preclude this argument.

In construing *World-Wide Volkswagen*, the *Ford* Court "contrasted the dealer's position to that of two other defendants—Audi, the car's manufacturer, and Volkswagen, the car's nationwide importer" and found that "if Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable for a car's catching fire there—even though the vehicle had been designed and made overseas and sold in New York." *Ford Motor Co.*, 592 U.S. at 363. Consistently, in *World-Wide Volkswagen*, the Court stated that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." 444 U.S. at 297-98.

Here, the Korean entities did more than simply place their Vehicles into the stream of commerce. The Korean entities specifically designed Vehicles for the U.S. market that it then specifically exported to the U.S. The Korean entities fully

intended for California consumers to purchase the Vehicles. Thus, the Korean entities purposely availed themselves of the California market and can be subjected to the court's jurisdiction to adjudicate claims for injuries caused by their defective products. Other district courts around the U.S. have reached the same conclusion: finding that the use of a subsidiary to distribute foreign-manufactured products in the U.S. does not shield the manufacturer from personal jurisdiction. *See, e.g.*, *Klein v. Ljubljana Inter Auto d.o.o.*, No. CV 20-10079-DMG, 2022 WL 16859589, at *3 (C.D. Cal. Aug. 2, 2022) (quoting *World-Wide Volkswagen*, 444 U.S. at 297) ("[T]he [vehicle] did not end up in California by happenstance—[the parent corporation] specifically engaged [the subsidiary] as a distributor to sell the cars in the United States . . . Through these efforts, it 'serve[d] ... the market for its product' in California."); *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 438 (D. N.J. 2021) (finding sufficient showing of purposeful availment by the foreign parent corporation because "[the parent corporation] serves the American market through [the American subsidiary]. There are no [parent corporation]-made cars on American roads save those that are here by virtue of the [parent corporation/subsidiary] relationship.").

The overwhelming evidence establishes that the Korean entities targeted California, both directly and indirectly, and thus are subject to personal jurisdiction under *Ford*. The *Ford* Court emphasized that a foreign manufacturer is subject to

17

personal jurisdiction through its indirect or direct efforts to serve the forum state, adopting the dicta in *World-Wide*, which "has appeared and reappeared in many cases since." *Ford Motor Co.*, 592 U.S. at 364 (first citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011), then citing, *Asahi Metal*, 480 U.S. at 110 (opinion of O'Connor, J.) which both adopt this rule). Plaintiffs' extensive shipping records are evidence of the Korean entities' efforts to directly serve the California market. The Korean entities' declarations, which attempted to distance KC and HMC from their American subsidiaries and activities in the U.S., prove that the Korean entities also indirectly served the California market through third parties. These activities provide more than a sufficient basis to subject the Korean entities to personal jurisdiction under *Ford*.

Moreover, the policy that Defendants' position would impose is untenable. Defendants argued at the hearing regarding Plaintiffs' motion for jurisdictional discovery that, as long as the Korean entities are shipping their vehicles to a "solvent entity," that entity is the "proper defendant," not the Korean entities. (7-ER-1593-1636 at 15:13-15). This would allow foreign defendants to escape even the potential of liability by preventing them from being subjected to jurisdiction in the U.S. despite their acts of designing, manufacturing, and, as Judge Selna pointed out, putting defective products on the ship. (*See* 7-ER-1593-1636 at 12:6-15). In recognizing the policy implications of Defendants' position, Judge Selna asked:

"Why does the defendant get to pick as you seem to be proposing which entity in the chain should be brought into the litigation on the basis of one entity being solvent and, you know, prima facie able to respond? Why should defendant get to make that choice?" (7-ER-1593-1636 at 15:17-21). The position advanced by Defendants is contrary to the law and cannot stand.

In sum, the Korean entities purposely availed themselves of the California market by designing and manufacturing Vehicles for the California market and sending thousands of shipments through ports in California for sale in California by domestic subsidiaries. Under Ninth Circuit precedent, this is sufficient to establish purposeful availment and the district court's decision was in error.

**B. Plaintiffs' Claims Arose Out of or Related to the Korean Entities' Contacts with California**

Plaintiffs have also met the burden of demonstrating that their claims arose out of or related to the Korean entities' contacts with California. A claim relates to the defendant's contacts with the forum state when, "a company ... serves a market for a product in the forum State and the product malfunctions there." *Yamashita*, 62 F.4th at 504-05 (quoting *Ford Motor Co.*, 592 U.S. at 363). In construing *Ford*, this Court has provided guidance for determining whether a defendant's contacts with the forum state sufficiently relate to the plaintiff's injury. *Id.* at 505. First, "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend

to be caused by those contacts." *Id.* Second, "a plaintiff's injury relates to a defendant's forum contacts if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Id.* at 506.

Here, Plaintiffs' injuries relate to the Korean entities' extensive contacts with California because the Korean entities, by shipping the Vehicles to their subsidiaries, caused the Vehicles, which caused Plaintiffs' injuries, to be sent to and sold in California. Because the Korean entities designed and manufactured the Vehicles with a Theft Friendly Design, it was reasonably foreseeable that Plaintiffs would suffer injury when the Vehicles were stolen. Like in *Ford*, the Korean entities "systematically served a market in [the forum states] for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States. So there is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Ford Motor Co.*, 592 U.S. at 365 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Thus, Plaintiffs' claims clearly relate to the Korean entities' contacts with California because Plaintiffs' injuries were caused by the very products that the Korean entities sent to California, even if they were sent through subsidiaries. *See Falco*, 96 F. Supp. 3d at 1060 (citing *Schwarzenegger*, 374 F.3d at 802) ("Because [the parent corporation] was involved in and had authority over the manufacturing process, used [the subsidiary] as its distribution agent, and appears to have taken part

in the marketing of the vehicles, with the intent of selling them in California, Plaintiffs' claims under various consumer protection statutes arise out of and/or relate to [the parent corporation's] forum-related activities."); *In re German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1066-68 (N.D. Cal. 2019) ("The German Defendants, in short, targeted the United States as a market for their cars; and because the claims at issue are tied to the cars that they indirectly sold in the United States, personal jurisdiction over them is appropriate.").

## II.   THE DISTRICT COURT ERRED BY FAILING TO RESOLVE CONFLICTING STATEMENTS IN PLAINTIFFS' FAVOR

The district court's decision accepted as true both the declarations submitted by the Korean entities' in-house counsel and the Defendants' interpretation of Plaintiffs' evidence. This was legal error because, at the pleading stage, conflicting evidence must be resolved in Plaintiffs' favor. *See LNS Enters. LLC*, 22 F.4th at 858. "Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we **must** adopt [the plaintiff's] version of events for purposes of this appeal." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (emphasis added).

When a motion to dismiss is decided without an evidentiary hearing, the court "only inquire[s] into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Boschetto*, 539 F.3d at 1015. In considering

the written materials, the court must not weigh conflicting affidavits. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) ("Where affidavits are directly conflicting on material points, we do not see how it is possible for the district judge to 'weigh' the affidavits in order to resolve disputed issues."). "If both sides submit affidavits, then '[c]onflicts between the parties over statements contained in affidavits **must** be resolved in the plaintiff's favor.'" *LNS Enters. LLC*, 22 F.4th at 858 (emphasis added) (quoting *Boschetto*, 539 F.3d at 1015) (emphasis added); *Schwarzenegger*, 374 F.3d at 800. Applying these standards, the district court clearly erred by resolving conflicting statements in the Defendants' favor.

## A. The District Court Erred by Resolving Conflicting Statements in the Defendants' Favor

Both sides submitted declarations regarding the Korean entities' contacts with California. The conflicting statements in those declarations should have been construed in Plaintiffs' favor. In support of their jurisdictional allegations, Plaintiffs submitted the declaration of Nickie Bonenfant, Chief Operating Officer of ImportGenius. Mr. Bonenfant's company, ImportGenius, "provides access to shipping databases from Customs agencies in the United States[.]" (2-ER-74-79). ImportGenius' records are compiled directly from US Customs Bills of Lading and reflect "real-time, accurate information on actual ocean freight shipments passing through all US ports." (*Id.*).

Plaintiffs offered the Bonenfant Declaration and accompanying appendices to prove that the Korean entities, rather than their US-based subsidiaries, were the shipper of record for thousands of the shipments from the Republic of Korea to the State of California. (*See* 2-ER-74-79, 2-ER-80-346, 3-ER-358-646 and 4-ER-648-668, 4-ER-669-946 and 5-ER-948-1043, and 5-ER-1044-1246 and 6-ER-1248-1373). This data substantiates Plaintiffs' jurisdictional allegations by demonstrating that the vast majority of these shipments were delivered to the State of California. These systematic and repeated shipments conclusively demonstrate that the Koren entities "deliberately reach out beyond [their] home" and that their contacts with California are not "random, isolated, or fortuitous." *Ford Motor Co.*, 592 U.S. at 359.

In opposition, the Korean entities submitted nearly identically worded declarations provided by their in-house counsel. These initial declarations, although carefully worded to give the appearance of evidentiary relevance, stopped short of actually contradicting Plaintiffs' allegations. Read literally, the declarations did not support a finding that the district court lacked jurisdiction because "uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

On reply, the Korean entities submitted supplemental declarations which directly denied the jurisdictional allegations of Plaintiffs' Complaint for the first

time. For example, the supplemental declarations state that KC and HMC "d[o] not maintain a research and design facility in California" and "d[o] not employ thousands of people within California." (*See* 2-ER-71; 2-ER-52). Plaintiffs were not given any opportunity to respond to these supplemental declarations.

By denying the content of Plaintiffs' jurisdictional allegations, these supplemental declarations did nothing more than identify contested issues of fact regarding the Korean entities' contacts with California. Plaintiffs did not rely solely on the bare allegations contained in their complaint. Instead, Plaintiffs submitted their own declarations to establish the truth of their contentions. Under this Court's precedent, the district court should have resolved conflicting statements contained in the declarations in Plaintiffs' favor. *LNS Enters. LLC*, 22 F.4th at 858 (citing *Schwarzenegger*, 374 F.3d at 800) ("If Plaintiffs had filed affidavits or declarations in response, the district court and this court would have been obligated to resolve conflicting statements in Plaintiffs' favor."). In determining that Plaintiffs failed to establish purposeful availment on the part of the Korean entities, the district court improperly weighed evidence and resolved these conflicts in the Defendants' favor. (*See* 1-ER-11) (citing and agreeing with the Korean entities' declarations and stating, "[t]he declarations submitted by Defendants explicitly deny such allegations."). Further, in citing the Korean entities' declarations, the district court fallaciously characterized them as presenting "uncontested facts [which] establish that HMC and

24

KC do not distribute or sell vehicles in California or the United States[.]" (*See* 1-ER-12). The district court's description of the facts contained in Defendants' declarations as "uncontested" amounted to legal error because it permitted the Court to resolve conflicting statements in the Defendants' favor. By accepting Defendants' version of the facts, the district court applied the law incorrectly. The district court was required to resolve conflicting statements in the Plaintiffs' favor, and the order should be reversed.

If defendants are allowed to prevail on a motion to dismiss by simply denying the truth of well-supported jurisdictional allegations, it will be nearly impossible to successfully bring suit against foreign corporations. This Court pointed out this very issue when it recognized that placing such a high burden on the plaintiff "would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials." *Data Disc, Inc.*, 557 F.2d at 1285. This is precisely what Defendants attempted to do. Dismissing a plaintiff's complaint on this basis is contrary to this Court's precedent and will frustrate well-pleaded claims against foreign manufacturers.

**B. The District Court Erred in Adopting Defendants' Interpretation of Plaintiffs' Shipping Records**

The district court further erred in crediting Defendants' interpretation of the shipping records over Plaintiffs' interpretation of those records. In finding

insufficient contacts for purposeful availment, the district court looked only at eight shipments from HMC and KC to California that were highlighted in the body of Plaintiffs' opposition. (*See* 1-ER-19). However, those eight shipments were not the whole picture. They were merely excerpted from the voluminous shipping records attached as an exhibit to the pleading and did not constitute the whole of the shipments from the Korean entities to the United States. According to the declaration of Nickie Bonenfant and accompanying shipping records, between November 1, 2006, and March 1, 2024, HMC initiated approximately 10,510 shipments to U.S. ports. (*See* 2-ER-78, 3-ER-358-646 and 4-ER-648-668). More than 70% of HMC's shipments (7,503) were delivered directly to the State of California. (*See* 2-ER-80-346 and 3-ER-348-357). Similarly, KC directed approximately 4,868 shipments of vehicles and automobile parts to the State of California. (*See* 4-ER-669-946 and 5-ER-948-1043). Shipments to California constituted approximately 77% of all of KC's shipments to the United States over the same period of time. (*See* 4-ER-669-946 and 5-ER-948-1043, 5-ER-1044-1246 and 6-ER-1248-1373).

The Korean entities argued that those shipments were insufficient to establish personal jurisdiction, claiming that Plaintiffs only identified eight shipments out of thousands contained in the shipping records where KC or HMC were the consignees. (*See* 2-ER-56). The district court ultimately accepted these false statements and accorded Plaintiffs' shipping records no weight. (*See* 1-ER-19). In agreeing with

Defendants' interpretation, the district court improperly weighed the evidence. *See LNS Enters. LLC*, 22 F.4th at 858; *Data Disc, Inc.*, 557 F.2d at 1284. At the jurisdictional stage, the district court was obligated to examine the evidence offered; not merely adopt Defendants' characterization of its excerpts. The Plaintiffs' offered shipping records, when taken as true, demonstrate sufficient contacts with the forum state to subject the Korean entities to personal jurisdiction, and the district court's decision must be reversed.

## III.   THE DISTRICT COURT ERRED BY DENYING PLAINTIFFS JURISDICTIONAL DISCOVERY

At the hearing on Plaintiffs' Motion for Leave for Jurisdictional Discovery, Judge Selna made comments indicating that he thought the issue of personal jurisdiction was clearly established without the need for jurisdictional discovery. Judge Selna asked counsel for Plaintiffs: "Why do you need this discovery to move on to the substantive jurisdiction questions?" (7-ER-1593-1636 at 22:25-23:2). Plaintiffs' counsel began explaining that "if the plaintiff is able to show, for example, that the defendant is designing a product for a particular market, which I think we've submitted evidence to that effect, or advertising in the target forum" when Judge Selna interjected: "You're kind of making my point. It sounds as if you have the substantive evidence to move to the jurisdictional questions themselves." (7-ER-1593-1636 at 23:9-16). Judge Selna then denied jurisdictional discovery.

27

Subsequently, after the hearing regarding Defendants' Motion to Dismiss, Judge Selna ruled that Plaintiffs provided insufficient evidence of the Korean entities' contacts with California. (1-ER-20). Judge Selna's initial impression of Plaintiffs' factual allegations was accurate. Plaintiffs have offered sufficient evidence to make a prima facie case for personal jurisdiction over the Korean entities, and the order granting Defendants' Motion to Dismiss should be reversed.

This odd series of events constitutes legal error that resulted in prejudice to the Plaintiffs. The district court denied jurisdictional discovery on the basis that it was unnecessary to prove Plaintiffs' jurisdictional allegations; only to then rule that Defendants presented "uncontested" evidence that the court lacked personal jurisdiction.

A denial of jurisdictional discovery is reviewed for abuse of discretion. *Yamashita*, 62 F.4th at 507. This Court has held that "[j]urisdictional discovery 'should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Id.* (quoting *Laub v. U.S. Dept. of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003)). Though "a mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific denials, are insufficient reasons for a court to grant jurisdictional discovery[,]" Plaintiffs here alleged far more than bare allegations based on a hunch. *Id.* (quoting *LNS Enters. LLC*, 22 F.4th at 864-65).

Plaintiffs offer extensive shipping records showing thousands of shipments of vehicles designed and manufactured by the Korean entities sent into the United States and California. (*See* 2-ER-80-346, 3-ER-358-646 and 4-ER-648-6684-ER-669-946 and 5-ER-948-1043, and 5-ER-1044-1246 and 6-ER-1248-1373). Plaintiffs' records also show that the Korean entities sent test cars to California, demonstrating the Korean entities' efforts to serve the market in the forum state. (*Id.*) Defendants contested those "pertinent facts bearing on the question of jurisdiction" and thus jurisdictional discovery was necessary to resolve these contested issues. *Yamashita*, 62 F.4th at 507.

Further, the declarations submitted by the Korean entities demonstrate the need for jurisdictional discovery in this case. In the face of thousands of shipping records, the Korean entities simply stated that they "sell[] some of those vehicles to [the subsidiaries] in the Republic of Korea." (6-ER-1423, and 6-ER-1427). That statement addresses only the location where the on-paper legal title of "some" (but not all) vehicles sent to the United States changed hands. The shipping records are clear evidence showing that Defendants are targeting California with Vehicles. Additionally, the Korean entities deny that they "employ thousands of people within California[,]" while leaving room for them to employ just less than "thousands." (*See* 2-ER-68, 2-ER-52). Plaintiffs must be given the opportunity to probe these

equivocal denials and determine the exact nature of the Korean entities' contacts with California.

One of the key issues in this lawsuit is the Defendants' decision to specifically manufacture and market Vehicles without anti-theft devices only for the US Market. Notably, the import data shows that while the Korean entities exported the defective Vehicles to California, they simultaneously exported identical makes and models into Canada *with* anti-theft devices, all through the same port in the Central District of California. That process demonstrates that the decision to import defective Vehicles into California is being made in Seoul, Korea. Jurisdictional discovery would ultimately allow the parties to determine the extent of the Korean entities' involvement in directing the defective Vehicles to the U.S. market. In other words, jurisdictional discovery will allow the parties to confirm that the Defendants' conduct specifically targeted California.

Again, Plaintiffs have evidence that illustrates why jurisdictional discovery is warranted. This, in fact, draws a parallel to *Never Too Hungover, LLC v. Drinkaid LLP*, 2024 WL 402659, at *1-2 (D. Nev. Feb. 1, 2024). There, the court noted that because the plaintiffs' evidence showed that, "[a]s the volume of sales and the methods of marketing to Nevada consumers may impact the reasonableness of exercising personal jurisdiction over the defendants, [the court] require[s] a more satisfactory showing of facts on these issues. Therefore jurisdictional discovery is

appropriate." *Id.* at *2. Similarly, here, the evidence Plaintiffs have adduced regarding the volume of manufactured vehicles sent to California consumers would also impact the reasonableness of exercising personal jurisdiction over the Korean entities, thus warranting jurisdictional discovery.

Finally, Plaintiffs are entitled to jurisdictional discovery because denial of "discovery result[ed] in actual and substantial prejudice[.]" *Yamashita*, 62 F.4th at 507 (quoting *Boschetto*, 539 F.3d at 1020). In the absence of jurisdictional discovery, the district court dismissed Plaintiffs' complaint based only on the contested statements authored by Defendants' in-house counsel. If that is the law in the 9th Circuit, then plaintiffs will be precluded from recovering against the foreign manufacturers in virtually all cases. This would frustrate the very purpose of jurisdictional discovery and would generate a seismic shift in the law.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed and the case remanded for further proceedings.

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, the undersigned attorney states that no other cases pending in this court arise out of the same or consolidated cases in the district court or agency, involve the same transaction or event, or involve the same or closely related issues under California law.

**Signature:** /s Adam M. Romney           **Date:** December 11, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**:_____24-5219_____

      I am the attorney or self-represented party.

      **This brief contains 6,874 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

      I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** /s Adam M. Romney_____      **Date:** December 11, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 24-5219

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Subrogation Insurance Appellants Opening Brief, Index Volume, Volumes 1-8

**Signature** | /s/ Grace Graham-Zamudio | **Date** | 12/11/24

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15** | *Rev. 12/01/2018*